Argued and submitted November 10, 2008, affirmed April 29, 2009

In the Matter of the Compensation of
Kathleen C. Gibler, Claimant.

INTERSTATE METAL,
*Petitioner,*

*v.*

Kathleen C. GIBLER,
*Respondent.*

Workers' Compensation Board
0604819; A137260

206 P3d 1151

Brad G. Garber argued the cause for petitioner. With him on the brief was Wallace, Klor, & Mann, P.C.

Edward J. Harri argued the cause for respondent. With him on the brief was J. Michael Casey.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

### SCHUMAN, J.

Employer seeks judicial review of an order by the Workers' Compensation Board (board) ruling that claimant filed a timely claim for benefits based on carpal tunnel syndrome and that the disease was compensable because claimant's employment activities were its major contributing cause. We affirm.

The following facts are undisputed. Claimant worked for employer as an office manager and customer service representative for 29 years. Approximately half of each workday was spent telephoning, writing by hand, keyboarding, using a "10-key" calculator, and filing. In 2002, experiencing some pain in her hands and forearms, claimant visited her family physician, Dr. Canzler, who diagnosed her with bilateral carpal tunnel syndrome and recommended that she wear braces at night. He told claimant that the condition was work related. The braces helped relieve her pain, and she continued to work.

The pain did not end; in fact, it worsened. In April 2006, she returned to Canzler, and this time he recommended surgery. She completed the necessary workers' compensation claim forms and was interviewed by an investigator. Employer denied her claim in June 2006, and claimant requested a hearing.

Before the hearing occurred, a nerve conduction study confirmed that claimant had bilateral median nerve entrapment. Thereafter, Dr. Button examined claimant on behalf of employer. He found nothing in her nonwork activities or medical history that he considered to be a factor that contributed to her condition, although he did note that one of her five siblings had carpal tunnel syndrome. Button concluded that the cause of claimant's condition was "idiopathic," by which he meant (according to his deposition testimony) that the cause was unknown. He did not ask claimant how much time she spent at various work activities, nor did he ask her if she performed repetitive tasks; rather, he had the impression that her hand activity was intermittent. He did not know that her brother, who had carpal tunnel syndrome, was a carpenter who engaged in repetitive tasks. Although he acknowledged that prolonged keyboard

work could be a risk factor for the development of carpal tunnel syndrome and that repetitive finger use could raise the pressure in the carpal tunnel, he also wrote, citing various medical journals, that

> "publications increasingly have refuted any perception of a cause-and-effect relationship regarding keyboarding, repetitive motion, etc. Even workers involved in the most sustained keyboarding or data entry, such as medical transcription, have no greater incidence of carpal tunnel syndrome compared to a comparable cohort of the population."

(Citations omitted.)

■ Based on the foregoing, employer argued to the administrative law judge (ALJ) that claimant had not met her burden of establishing that her employment was the major contributing cause of her carpal tunnel syndrome. *See* ORS 656.266(1) (worker has burden of establishing compensability of occupational disease). The ALJ rejected that argument, and the board affirmed. We review the board's finding for substantial evidence. "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). "[I]if there are doctors on both sides of a medical issue, whichever way the Board finds the facts will probably have substantial evidentiary support." *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988). That is the case here.

■ Employer relies primarily on the fact that Button was a specialist and that Canzler was, by his own admission, a general practitioner. However, as the ALJ found and the board agreed,

> "Dr. Button formed the impression that [claimant's] hand activity was intermittent. He relied on a family history of carpal tunnel syndrome, although that condition appeared in one of five siblings who was employed as a carpenter. Dr. Button did not consider that information.
>
> "On the other hand, Dr. Canzler has known Claimant for approximately ten years. Dr. Canzler reviewed Claimant's testimony and is aware of details of Claimant's work activity and family history that Dr. Button does not know. Consequently, I find that Dr. Canzler relied on a

more accurate history than did Dr. Button. Dr. Canzler provides a reasonable explanation for the development of Claimant's condition. I find Dr. Canzler persuasive * * *."

We agree. Substantial evidence supports the board's finding, and we reject employer's contention to the contrary.

 Employer also argues that, even if employment activities were the major contributing cause of claimant's carpal tunnel syndrome, her claim is nonetheless not compensable because she did not timely file it. Again, we disagree. Carpal tunnel syndrome is, under the circumstances of this case, an occupational disease. *See Georgia-Pacific Corp. v. Warren*, 103 Or App 275, 278, 796 P2d 1246 (1990), *rev den*, 311 Or 60 (1991) (carpal tunnel syndrome is a set of symptoms and, when brought on by employment activity, the symptoms are the disease). ORS 656.807 establishes the time within which an occupational disease claim must be filed:

"(1) All occupational disease claims shall be void unless a claim is filed with the insurer or self-insured employer by whichever is the later of the following dates:

"(a) One year from the date the worker first discovered, or in the exercise of reasonable care should have discovered, the occupational disease; or

"(b) One year from the date the claimant becomes disabled or is informed by a physician that the claimant is suffering from an occupational disease."

It is by now well settled that this statute lists four dates and that the claim must be filed within one year of the latest. *Freightliner LLC v. Holman*, 195 Or App 716, 721, 98 P3d 1165 (2004); *Bohemia, Inc. v. McKillop*, 112 Or App 261, 265, 828 P2d 1041 (1992). In 2002, Canzler told claimant that she had carpal tunnel syndrome and that it was related to her work activities. Thus, at that time, she should have, and had, discovered the occupational disease, by virtue of having been informed of that fact by a physician. If, at that time, she had "become[ ] disabled," her claim, filed in 2006, was not timely.

The term "disabled" is not defined in the workers' compensation statutes or rules. Employer urges us to adopt the definition of "disability" from the Americans with Disabilities Act, 42 USC § 12102, or its Oregon analog, ORS

659A.100, both of which define a disability as an impairment that substantially limits one or more major life activities, including employment. Because there is no evidence that claimant's employment (or any other life activity) was, in fact, impaired before 2006, employer would not benefit from its own suggestion. In any event, we need not venture into an unrelated area of law. The definition section of the workers' compensation statutes provides, " 'A nondisabling compensable injury' is any injury which requires medical services only." ORS 656.005(7)(d). We presume that, by parity of reasoning, a nondisabling compensable occupational disease is one that requires medical services only. That definition describes claimant's condition before 2006. Thus, claimant might have had a compensable occupational disease as early as 2002—that is, a disease that required medical services in the form of braces. *See* OAR 436-010-0005(26) (braces are medical services). But, until 2006, that medical service was the only treatment that she required. Her disease was therefore nondisabling, which is to say, she was not disabled, and she remained not disabled at least until 2006. Her claim was therefore timely.

Affirmed.