Argued and submitted January 25, 2011; reassigned April 3, affirmed June 19, petition for review denied December 12, 2013 (354 Or 597)

In the Matter of the Compensation of
Charles J. Baker, Claimant.

Charles J. BAKER,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE
CORPORATION,
Frahler Electric,
SAIF Corporation,
and EC Company.
*Respondents.*

Workers' Compensation Board
0701646, 0701564; A140572

305 P3d 139

Edward J. Hill argued the cause and filed the briefs for petitioner.

David O. Wilson argued the cause and filed the brief for respondents Liberty Northwest Insurance Corporation and Frahler Electric.

David L. Runner argued the cause for respondents SAIF Corporation and EC Company. On the brief was Julene M. Quinn.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

WOLLHEIM, J., dissenting.

### SCHUMAN, P. J.

Claimant seeks review of an order of the Workers' Compensation Board determining that his occupational disease claim for a left shoulder condition was untimely under ORS 656.807(1). We affirm.

Claimant is a journeyman electrician who has worked for multiple employers since 1997. He worked for Frahler Electric, Liberty Northwest's insured, for a period of approximately seven and one-half months in 2002. In the spring of 2002, while working for Frahler, claimant began to experience left shoulder pain. After an MRI, Dr. Sedgewick diagnosed left shoulder posterior subluxation and glenohumeral degenerative joint disease. In January 2003, Sedgewick performed a left shoulder surgery. Sedgewick's post-surgical reports noted that claimant's left shoulder was "pretty dog gone worn out *** from his activities as an electrician." Sedgewick informed claimant that his work was the cause of his shoulder disease. Claimant did not file a claim for workers' compensation benefits at that time because he was concerned about the stigma associated with filing a claim.

Claimant returned to regular work activities as a journeyman electrician for a different employer in June 2003, performing his regular job duties without limitations and experiencing only occasional, insignificant soreness in his left shoulder. Beginning in July 2005, claimant worked for EC Company, SAIF Corporation's insured. In September 2005, he began to experience increased symptoms in his left shoulder, including pain and grinding. Claimant received chiropractic treatment for left shoulder symptoms from October 2005 through April 2006, and reported to the chiropractor that increased overhead work was causing his shoulder pain/soreness. Claimant had an MRI in December 2006, and Dr. Huebert diagnosed a partial tear of the supraspinatus tendon, a long tear of the glenoid labrum, a large defect in the articular cartilage of the glenoid, and moderate to severe glenohumeral degenerative joint disease.

In January 2007, claimant saw Dr. Irvine, an orthopedic surgeon, who diagnosed post-traumatic left shoulder osteoarthritis "as a result of an occupational disease and repetitive overuse in a 47-year-old electrician." Irvine believed that claimant's work activities were the major contributing cause of his left shoulder condition and recommended conservative treatment and a change of occupation. He also discussed the possible future need for a left shoulder "arthroplasty," or shoulder replacement. In January 2007, claimant filed a claim for an occupational disease against both Liberty Northwest's insured Frahler Electric, and SAIF's insured, EC Company.

On SAIF's behalf, claimant was examined by Dr. Bald, who diagnosed moderately severe degenerative osteoarthritis. Bald opined that claimant's work activities were a "very definite contribution," but could not say whether work was the major contributing cause of the condition, because claimant had little or no osteoarthritis in his dominant right shoulder. Sedgewick concurred in Bald's opinion. Both SAIF and Liberty Northwest denied compensability and responsibility for claimant's occupational disease claim for a left shoulder condition, and claimant requested a hearing.

In the meantime, Irvine performed an elective left shoulder replacement. In contrast to Sedgewick and Bald, Irvine opined that the major contributing cause of claimant's shoulder condition was his work as an electrician. Irvine opined that, because claimant equally used both arms in an overhead position, it was expected that the dominant shoulder would serve a protective function, and it was therefore not surprising that claimant would have more damage to the nondominant, left shoulder.

An administrative law judge (ALJ) found that Irvine's opinion was more persuasive and determined that claimant had established the compensability of his condition under the substantive rule of liability aspect of the last injurious exposure rule, by proving that the left shoulder condition resulted from employment in general. As for which insurer was responsible, the ALJ determined that,

although Liberty Northwest's insured, Frahler Electric, was presumptively responsible because claimant first sought and received medical treatment while at that employment, *see Agricomp Ins. v. Tapp,* 169 Or App 208, 212-13, 7 P3d 764, *rev den,* 331 Or 244 (2000), Liberty Northwest had succeeded in establishing that responsibility should shift forward to SAIF, as the insurer for the last employment that actually contributed to a worsening of claimant's left shoulder condition, *see Oregon Boiler Works v. Lott,* 115 Or App 70, 74, 836 P2d 756 (1992). Accordingly, the ALJ assigned responsibility for claimant's condition to SAIF and set aside SAIF's denial of the claim and affirmed Liberty Northwest's denial of the claim.

At the hearing, both Liberty Northwest and SAIF had asserted that the occupational disease claims were void because each claim was untimely. The ALJ concluded that the issue of timeliness was moot as to Liberty Northwest, because Liberty Northwest was not responsible for the claim. As to SAIF, the ALJ concluded that SAIF had essentially abandoned the untimeliness defense in written closing arguments. Thus, the ALJ did not rule on whether claimant had timely filed his occupational disease claims.

SAIF appealed to the board. The board did not reach the merits of the claim. Instead, with one member dissenting, the board determined that the occupational disease claim, filed with SAIF in 2007, was untimely under ORS 656.807(1), because the claim had not been filed within one year of the date claimant was informed by Sedgewick in 2003 that he was suffering from an occupational disease. The board rejected claimant's contention that the claim was timely under this court's opinions in *Ahlberg v. SAIF,* 199 Or App 271, 111 P3d 778 (2005), and *Kepford v. Weyerhaeuser Co.,* 77 Or App 363, 713 P2d 625, *rev den,* 300 Or 722 (1986), reinstated SAIF's denial, and reversed the ALJ's order. The board also upheld Liberty Northwest's denial. One board member dissented, reasoning that claimant's work exposure after his 2003 diagnosis had contributed to claimant's left shoulder condition to the extent that the current claim was a new occupational disease—distinct from the condition that existed in 2003—and therefore not barred by ORS 656.807.

Claimant seeks judicial review of the board's order, arguing that the board's interpretation of the occupational disease statutes was incorrect. We review the board's statutory interpretation for errors of law. ORS 183.482(8)(a)(B).

ORS 656.807(1) provides:

"All occupational disease claims shall be void unless a claim is filed with the insurer or self-insured employer by whichever is the later of the following dates:

"(a)  One year from the date the worker first discovered, or in the exercise of reasonable care should have discovered, the occupational disease; or

"(b)  One year from the date the claimant becomes disabled or is informed by a physician that the claimant is suffering from an occupational disease."

The statute lists four possible dates that trigger the running of the limitation period and requires that a claim for an occupational disease be filed within one year of the latest of those. *Bohemia, Inc. v. McKillop*, 112 Or App 261, 828 P2d 1041 (1992). The start of the limitation period is suspended until the last of the events occurs. *Interstate Metal v. Gibler*, 228 Or App 180, 184-85, 206 P3d 1151 (2009); *see also Freightliner LLC v. Holman*, 195 Or App 716, 721-22, 98 P3d 1165 (2004).

It is undisputed that claimant knew in 2003, when Sedgewick diagnosed the left shoulder condition and performed surgery, that claimant was suffering from a degenerative left shoulder condition that was related to his work as an electrician. Claimant does not dispute that in 2003, he was disabled as a result of his left shoulder condition. Substantial evidence supports the board's determination that claimant was informed by a physician that his left shoulder condition was due to his work activities as an electrician. Any claim that claimant might have had for an occupational disease against Liberty Northwest's insured—his employer in 2003—is barred by ORS 656.807(1).

The question presented here is whether an occupational disease claim is also barred against his subsequent employer, SAIF's insured. Claimant asserts, essentially, that a new limitation period should begin with each subsequent

period of employment, which here began in July 2005. Additionally, claimant argues, in light of claimant's subsequent exposure at his employment with SAIF's insured, which caused a worsening of his condition, claimant is not barred from bringing an occupational disease claim against SAIF for his current shoulder condition. Claimant essentially argues the position of the dissenting board member. Finally, claimant argues, because of the employment exposure subsequent to 2003, which could not have been considered in Sedgewick's original diagnosis, and the extent to which claimant's shoulder condition has worsened as a result of the contribution of his employment with SAIF's insured, the current left shoulder condition is, for purposes of the limitation period set forth in ORS 656.807(1), a new occupational disease.

In claimant's view, our opinions in *Ahlberg* and *Kepford* support his contention. In *Ahlberg*, the claimant had been diagnosed with bilateral hearing loss in 1984 and that same year filed an occupational disease claim for hearing loss, which was denied because test results at that time indicated that the claimant's hearing loss was due to his age and not the exposure to loud noise at work. The claimant's hearing deteriorated in the next 17 years, and, in January 2002, he filed a second occupational disease claim, asserting that he suffered from deafness as a result of working around loud machinery for 42 years. SAIF denied the claim, contending that the second claim was barred by the earlier, unappealed, denial. The board upheld the denial because, as a result of the claimant's failure to challenge the earlier denial, the claimant was precluded from seeking compensation for the predenial exposure, which, accordingly, had to be treated as a preexisting noncompensable condition. The board concluded, further, that the claim was not compensable because the post-denial exposure was not the major contributing cause of the hearing loss.

This court reversed the board's order. Addressing SAIF's contention that the claimant's claim for hearing loss was barred by claim preclusion, this court held that, although a claimant is ordinarily precluded by the doctrine of claim preclusion from relitigating the compensability of hearing loss in a subsequent claim, there is an exception if

the claimant's condition has worsened and the claim is supported by new facts that could not have been presented earlier. We noted in *Ahlberg* that in *Kepford*, this court had held that a worsening of a denied condition is a change in the condition that will support the relitigation of a previously denied claim. *Ahlberg*, 199 Or App at 275 (citing *Kepford*, 77 Or App at 367). We further reasoned that, assuming without deciding that the board was correct that the claimant's predenial hearing loss had to be treated as a preexisting condition, the claimant's predenial work exposure could nonetheless be considered in determining whether employment conditions were the major contributing cause of the worsening of the preexisting condition. We noted that ORS 656.802(2)(b) sets forth the proof necessary to establish the worsening of a preexisting disease and provides:

> "If the occupational disease claim is based on the worsening of a preexisting disease or condition pursuant to ORS 656.005(7), the worker must prove that employment conditions were the major contributing cause of the combined condition and pathological worsening of the disease."

We explained that the statute makes no distinction between employment conditions before or after the existence of the preexisting condition and only requires the claimant to prove that "any and all" working conditions were the major contributing cause of the current condition and a worsening of a preexisting condition. *Id.* at 276. Thus, we concluded, the claimant could establish the compensability of a second occupational disease claim based on a worsening of a preexisting condition that was not itself compensable, as long as the claimant's total work exposure (including exposure predating the preexisting condition) was the major contributing cause of the worsening of the preexisting condition. In essence, we reasoned, the second hearing loss claim based on new exposure was a new claim that could not have been litigated in the prior proceeding.

Claimant contends that, by analogy to *Ahlberg*, his current left shoulder claim against SAIF's insured is not barred by the limitation period that bars his claim against Liberty Northwest's insured. The reasoning underlying the

contention is that, as a result of subsequent exposure at a different employment that worsened his left shoulder condition, claimant suffers from a new occupational disease, separate from any occupational disease for which a claim might have been filed in 2003, at the time of Sedgewick's first diagnosis. Just as the claimant's second hearing loss claim in *Ahlberg* was not barred by claim preclusion because subsequent work exposure had resulted in a worsening of the hearing loss, claimant asserts that here, his current left shoulder occupational disease claim should not be barred by ORS 656.807(1), because his condition has worsened since his diagnosis in 2003 as a result of subsequent work exposure, and this current occupational disease is different from the occupational disease that was diagnosed in 2003.

If claimant's theory of compensability was that claimant's current left shoulder condition is a worsening of a preexisting condition, ORS 656.802(2)(b), we might be persuaded by claimant's attempted analogy to *Ahlberg* and *Kepford*, even though those cases were not about the limitation period of ORS 656.807(1). Both of those cases involved previously denied claims and occupational disease claims based on the worsening of a preexisting condition. *Ahlberg*, 199 Or App at 275; *Kepford*, 77 Or App at 365-66. The upshot of those cases is that, for purposes of claim preclusion, claims seeking compensation for a *worsening* of a preexisting condition are separate and distinct from claims seeking to establish the compensability of a condition as an occupational disease in the first instance. The problem for claimant is that his occupational disease claim against SAIF's insured is not based on a theory of a worsening of a preexisting condition. Rather, claimant concedes that no argument was either made or preserved under ORS 656.802(2)(b) regarding the worsening of a preexisting condition, and that this is a claim for a new occupational disease pursuant to ORS 656.802(2)(a). Nonetheless, claimant argues, this claim is different from anything for which claimant could have sought compensation in 2003; indeed, no claim could have been filed against SAIF's insured in 2003, as claimant had not worked for EC Company, SAIF's insured, at that time.

SAIF does not directly respond to claimant's argument. Instead, SAIF argues that it makes no difference that claimant had not yet worked for SAIF's insured at the time of his original diagnosis in 2003 and, therefore, claimant could not have brought a claim against SAIF at that time. In SAIF's view, ORS 656.807(1) bars this claim because it bars any claim for the same occupational disease of which claimant became aware in 2003. According to SAIF, it matters not that claimant's condition became worse under SAIF's insured. In SAIF's view, that would be true even if this claim were for a "worsening" of the condition under ORS 656.802(2)(b), because the circumstances existed in 2003 for the triggering of the one-year limitation period.

We do not need to consider in this case whether, if claimant's theory of the case had been that he experienced a worsening of a preexisting condition, the case would be analogous to *Ahlberg* or *Kepford* because, as noted, that is not how the case was presented. As ORS 656.807(1) provides, a claim for an occupational disease must be filed against the insurer or self-insured employer within one year of the later of the four circumstances set forth in ORS 656.807. The statute provides that *all* occupational disease claims "shall be void" if not filed within that one-year time period. The limitation period set forth in ORS 656.807(1) is triggered by circumstances relating to the particular occupational disease—not the particular period of employment—and must be filed with the insurer or self-insured employer by the latest of four possible dates set forth in the statute, as related to that occupational disease. There is no plausible interpretation of ORS 656.807(1) that supports the dissent's view that the four possible dates for triggering the limitation period for an occupational disease must be satisfied with each new period of employment.

It is undisputed that claimant was informed in 2003 that he had a degenerative left shoulder condition and that it was work related. Claimant had one year from the date that he received that information from his physician within which to file an occupational disease claim for that left shoulder condition. As noted, we conclude that substantial evidence supports the board's determination that the current claim is for the same condition diagnosed in 2003,

albeit in a more advanced state. We conclude that the board did not err in determining that claimant's claim is barred by ORS 656.807(1).

Affirmed.

**WOLLHEIM, J.,** dissenting.

The issue here is the interpretation ORS 656.807, which sets a one-year time limit for filing an occupational disease claim. The majority opinion agrees with both the Workers' Compensation Board (the board) and SAIF that the text of ORS 656.807 prohibits any occupational disease claim filed more than one year after the claimant is informed by a physician that the claimant is suffering from an occupational disease. Based on that same text and context, I conclude that ORS 656.807 does not prohibit a claimant from filing an occupational disease claim against a new employer when it would have been impossible to file such a claim against that new employer, because the claimant began work for that employer more than one year after a physician informed the claimant that he or she suffered from an occupational disease. Accordingly, I respectfully dissent.

## THE UNDISPUTED FACTS

The majority opinion correctly states the undisputed facts, which I summarize here. Claimant is an electrician and has worked for multiple employers. In 2002, while working for Liberty Northwest's insured, Frahler Electric, claimant sought medical treatment for his left shoulder. Dr. Sedgewick was the treating physician. Sedgewick performed left shoulder surgery in 2003 and informed claimant that his left shoulder was worn out due to claimant's work as an electrician. Claimant decided not to file a workers' compensation claim. In June 2003, claimant was released for his regular work and began working for a different employer.

In July 2005, claimant began working for SAIF's insured, EC Company. Due to increased left shoulder symptoms, claimant sought medical treatment. Dr. Irvine became claimant's attending physician. In 2007, Irvine

recommended left shoulder replacement surgery. In addition, Irvine informed claimant that the left shoulder condition was due to claimant's work as an electrician.

In January 2007, claimant filed occupational disease claims for his left shoulder with both Liberty Northwest and SAIF. Each insurer denied both compensability and responsibility, and claimant requested a hearing on both denials. In addition, both insurers argued the claim was void because it was untimely filed. At a hearing, the administrative law judge (ALJ) did not expressly address the insurers' untimely filing defense. The ALJ decided that SAIF had abandoned that defense and decided that Liberty Northwest's defense was moot because the ALJ had affirmed Liberty Northwest's denial. In addition, the ALJ set aside SAIF's denial. SAIF requested board review.

## THE BOARD'S ANALYSIS

The board did not determine whether claimant's left shoulder occupational disease claims were compensable. Instead, the board determined that SAIF had not abandoned its timeliness defense. The board held that claimant did not file his occupational disease claim until January 2007, well over the maximum one-year time period in ORS 656.807(1). The board relied on the text of ORS 656.807, which requires all occupational disease claims to be filed within one year from the date the claimant is informed by a physician that the claimant is suffering from an occupational disease. Claimant was so informed by Sedgewick in 2003. In addition, the board noted that the record did not establish that the 2007 claim was for a different condition from the 2003 condition.

## THE OCCUPATIONAL DISEASE STATUTES

This court's task is to determine what the legislature intended when it enacted ORS 656.807. To do that requires an examination of the text and context of the statute. *State v. Gaines*, 346 Or 160, 171, 206 P2d 1042 (2009). The court may also consider legislative history without determining that the text of the statute is ambiguous. *Id.* at 71-72. The court must determine the correct statutory interpretation and cannot be limited to the parties' arguments.

*Miller v. Water Wonderland Improvement District,* 326 Or 306, 309 n 3, 951 P3d 720 (1998); *Stull v. Hoke,* 326 Or 72, 77, 948 P3d 722 (1997). The relevant statutes are ORS 656.807, which defines the time limit for filing an occupational disease claim and ORS 656.802, which defines an occupational disease claim.

ORS 656.807 provides:

"(1) All occupational disease claims shall be void unless a claim is filed with the insurer or self-insured employer by whichever is the later of the following dates:

"(a) One year from the date the worker first discovered, or in the exercise of reasonable care should have discovered, the occupational disease; or

"(b) One year from the date the claimant becomes disabled or is informed by a physician that the claimant is suffering from an occupational disease.

"(2) If the occupational disease results in death, a claim may be filed within one year from the date that the worker's beneficiary first discovered, or in the exercise of reasonable care should have discovered, that the cause of the worker's death was due to an occupational disease.

"(3) The procedure for processing occupational disease claims shall be the same as provided for accidental injuries under this chapter."

ORS 656.802, in part, provides:

"(1)(a) As used in this chapter, 'occupational disease' means any disease or infection arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death, including:

"* * * * *

"(2)(a) The worker must prove that employment conditions were the major contributing cause of the disease.

"(b) If the occupational disease claim is based on the worsening of a preexisting disease or condition pursuant to ORS 656.005(7), the worker must prove that employment

conditions were the major contributing cause of the combined condition and pathological worsening of the disease.

"(c) Occupational diseases shall be subject to all of the same limitations and exclusions as accidental injuries under ORS 656.005(7).

"* * * * *

"(e) Preexisting conditions shall be deemed causes in determining major contributing cause under this section."

The majority opinion's analysis relies exclusively on portions of ORS 656.807(1). To paraphrase, *all* occupational disease *claims shall be void* unless a claim is *filed within one year from* when the claimant is *informed by a physician* that the claimant is suffering from an occupational disease. Because claimant was so informed in 2003 and his occupational disease claims were filed more than one year later, the claim filed against SAIF is void.

The problem is that the majority opinion ignores portions of ORS 656.807 and ignores the context of the Workers' Compensation Act, which requires a relationship between the employer and the worker. The claim must be filed with the insurer or self-insured employer. A self-insured employer is an employer who directly assumes the responsibility for providing compensation to subject workers and who meets certain statutory requirement. ORS 656.005(25); ORS 656.403(1); ORS 656.430. An employer is defined as including an entity that contracts to pay money for, and secures the right to direct and control, the person providing the services. ORS 656.005(13)(a). In turn, a worker means any person who provides services for money and is subject to the direction and control of an employer. ORS 656.005(30). That context establishes that there must be an existing employer and worker relationship before any occupational disease claim can be filed by the worker with the employer.

The language of ORS 656.802, as context, supports the conclusion that there must be an existing employer and worker relationship. ORS 656.802(1)(a) provides that the occupational disease must arise out of, and in the course of, employment and the occupational disease must be based on

activities to which the employee is not ordinarily subjected to other than during a period of regular actual employment. The worker must prove that employment conditions are the major contributing cause of the occupational disease. ORS 656.802(2)(a). Again as context, an occupational disease claim for the worsening of a preexisting condition requires the worker to establish that employment conditions were the major contributing cause of the pathologically worsening of the preexisting condition. ORS 656.802(2)(b). The language is based on an employment relationship between the employer and the worker.

The court should construe the Workers' Compensation Act so that the statutes are consistent with and in harmony with each other. *Davis v. Wasco IED*, 286 Or 261, 272, 593 P2d 1152 (1979). To construe ORS 656.807(1) as prohibiting claimant from having his occupational disease claim decided on the merits because he worked for multiple employers after 2003, is not construing the Workers' Compensation Act as consistent with the basic premise of the act, that is, that there is an existing employment relationship between the employer and the worker.

Claimant had no claim to assert against SAIF's insured until such time as there was an employment relationship between SAIF's insured and claimant. Claimant need not be able to determine what employers he will work for in the future and file prospective claims against such future employers in case, years later, claimant decides to file an occupational disease claim against a future employer.

For those reasons, I respectfully dissent.