Argued and submitted June 5, 2014, affirmed March 25, 2015

In the Matter of the Compensation of
Emma R. Traner, Claimant.

## SAIF CORPORATION
and State Operated Community Programs,
*Petitioners,*

*v.*

Emma R. TRANER,
*Respondent.*

Workers' Compensation Board
1104729; A152085

346 P3d 1248

David L. Runner, Special Assistant Attorney General, argued the cause and filed the briefs for petitioners.

Julene M. Quinn argued the cause for respondent. With her on the brief was Kryger Alexander Carlson PC.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

## DEVORE, J.

In this workers' compensation case, SAIF petitions for judicial review of an order of the Workers' Compensation Board (board), which concluded that, after claimant initiated a claim for a new or omitted medical condition under ORS 656.267(1), SAIF failed to formally accept or deny that request within 60 days as required by ORS 656.262(7)(a). Although the board ultimately determined that the claim actually involved only a symptom of previously accepted conditions, the board awarded attorney fees under ORS 656.262(11)(a) based on SAIF's unreasonable delay in accepting or denying what was claimed to be a new or omitted condition. On review, SAIF contends (1) that it was not required to respond to a claim later found to involve only a symptom; (2) that no attorney fees were permitted when no penalty was assessed; and (3) that SAIF's failure to respond timely or properly was not "unreasonable," given an uncertain state of the law. For the reasons that follow, we affirm.

The dispositive facts are not in dispute. Claimant compensably injured her right shoulder in 2007 while operating a floor-buffing machine. SAIF initially accepted a right shoulder strain, and later added right-shoulder tendonitis and a partial rotator cuff tear. The claim was closed in December 2008 but was reopened in July 2009 to address worsening tendonitis, which required two shoulder surgeries. In a post-surgery follow-up report, the attending physician, Dr. Yoshinaga, described worsening right-shoulder "arthralgia."

On March 9, 2011, claimant sent a letter to SAIF requesting acceptance of "right-shoulder chronic arthralgia." SAIF asked Yoshinaga about the arthralgia. He responded that arthralgia meant "pain," was "merely a descriptor of symptoms, and [was] not an objective diagnosis."

On April 12, SAIF sent claimant a letter responding that the request for acceptance of arthralgia "does not qualify as a claim under ORS 656.267 because [the] request seeks the acceptance of a body part, procedure, and/or symptom, which is not a new or omitted medical condition." The letter added that claimant could clarify her request in

writing and that it would then be processed. SAIF included a notice of hearing rights.

Claimant requested a hearing before an administrative law judge (ALJ). The ALJ deemed SAIF's April 12 letter to be a "denial" of a claim, and the ALJ determined that the denial was justified. Based on Yoshinaga's explanation of arthralgia, the ALJ found that arthralgia was a symptom of claimant's other accepted shoulder conditions and the resulting two surgeries. Therefore, arthalgia was not itself a new or omitted condition.

Claimant appealed to the board. The board affirmed the ALJ's finding that arthralgia was a symptom, not a new or omitted condition. Nonetheless, the board determined that SAIF had unreasonably delayed responding to the claim for arthralgia. The board observed that, under ORS 656.267(1), claimant was required to "clearly request formal written acceptance of a new [or] omitted medical condition ***." Whether or not ultimately successful, she had done so, and, in response, SAIF was obligated under ORS 656.262(7)(a) to give written notice of acceptance or denial of the requested medical condition within 60 days.[1] The board disagreed with the ALJ's characterization that SAIF's April 12 letter to claimant was a "denial." The board opined that the letter more closely resembled a "clarification letter" or a "no perfected claim letter," which is not a statutorily authorized response to a request for acceptance of a new or omitted medical condition. Because SAIF failed to formally accept or deny claimant's request within 60 days, the board concluded that the procedural failure represented a *de facto* denial.[2]

With that determination, the board reached the question whether claimant was entitled to a penalty or attorney fees under ORS 656.262(11)(a). The statute provides, in pertinent part:

---

[1] ORS 656.262(7)(a) provides, in part: "[W]ritten notice of acceptance or denial of claims for aggravation or new medical or omitted condition claims properly initiated pursuant to ORS 656.267 shall be furnished to the claimant by the insurer or self-insured employer within 60 days after the insurer or self-insured employer receives written notice of such claims."

[2] A *de facto* denial occurs when an insurer makes no response within the period during which the insurer must either accept or deny the claim. *SAIF v. Allen*, 320 Or 192, 211-12, 881 P2d 773 (1994).

"If the insurer * * * unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the insurer * * * shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees assessed under this section."

The board concluded that SAIF's letter, "without any legal support for such a document, and in direct contravention of case law requiring the carrier to either accept or deny such a claim, constitute[d] an unreasonable lapse in its claim[-] processing responsibilities." Because the board upheld SAIF's *de facto* denial of claimant's claim for arthralgia, there were no "amounts then due" and, consequently, no amounts upon which to base the 25 percent penalty. Even so, the board determined that a penalty was not a prerequisite to an award of attorney fees under ORS 656.262(11)(a). The board relied on its decision, *Nancy Ochs*, 59 Van Natta 1785, 1793 (2007), holding to that effect. The board recognized that attorney fees are to be awarded in a reasonable amount that is "proportionate to the benefit to the injured worker" and gives "primary consideration to the results achieved and to the time devoted to the case." ORS 656.262(11)(a). The board considered that the efforts of claimant's attorney "were of significant benefit to claimant" by obtaining a hearing and soliciting an express position from SAIF regarding claimant's arthralgia. The board awarded attorney fees of $1,500 for claimant's attorney's efforts.

As the first of three issues on appeal, SAIF contends that claimant did not initiate a claim for acceptance of a new or omitted medical condition within the meaning of ORS 656.267(1), inasmuch as the purported condition was ultimately determined to be a *symptom* of previously accepted conditions. Because there was no new or omitted condition, SAIF argues, it was not obligated under ORS 656.262(7)(a) to formally accept or deny claimant's request within 60 days. Because it was not obliged to respond, SAIF asserts that it did not unreasonably fail to accept or deny the purported claim.

This court has already answered that question. So, too, has the board. In *SAIF v. Stephens*, 247 Or App 107, 109, 269 P3d 62 (2011), a claimant asserted a claim for a new or omitted condition of coccydynia. When SAIF

inquired of the attending physician, she responded to SAIF, defining coccydynia as "pain in the coccyx." SAIF believed that the pain was a symptom of a bruised coccyx bone, a condition for which it had already given a modified notice of acceptance. *Id.* at 110. SAIF did not expressly accept or deny coccydynia as a medical condition. We ultimately agreed with SAIF that coccydynia was a symptom of other accepted conditions, and not a new or omitted medical condition, but we identified SAIF's failure to accept or deny the purported condition as an insurer's error. "Even if SAIF had correctly concluded that coccydynia was a symptom, it still had the obligation to either accept or deny the claim." *Id.* at 111-12. We explained, "Because claimant complied with the provisions of ORS 656.267 by expressly requesting acceptance of 'coccydynia,' SAIF had an obligation to process that claim by either accepting or denying coccydynia, and the board correctly concluded that its failure to do so was a *de facto* denial." *Id.* at 112.[3]

Our conclusion rested upon the terms of the statute and an observation in a prior decision, *Crawford v. SAIF*, 241 Or App 470, 250 P3d 965 (2011). Although the *Crawford* claim *did* involve a condition, not a mere symptom, we construed the same statutes to require that, if "the claimant expressly seeks to have accepted" a new or omitted condition, "then the insurer must respond by processing the omitted condition claim pursuant to ORS 656.262(7)(a)[.]" *Id.* at 480. A letter like SAIF's letter here, seeking clarification or telling a claimant that the claimant has not perfected a claim, "is not an adequate statutory response." *Id.* Construing the statutes together, we declared "that the failure of the insurer to respond to an omitted condition claim by accepting or denying it within 60 days is a procedural deficiency that gives rise to a denied claim." *Id.* at 481.

Our decision in *Stephens* and our observation in *Crawford* were not unprecedented. Some years before, the

---

[3] In *Stephens*, we held that, because the issue of attorney fees under ORS 656.262(11)(a) turned on whether there has been an unreasonable delay or denial, no attorney fees should have been awarded under the circumstances of that case, given the "confused state of the law" on an insurer's obligation to respond to a claim of a new or omitted condition. *Id.* at 114. We address the reasonableness of SAIF's denial in this case below. 270 Or App at 75-76.

board itself had held that an insurer must respond to what the claimant styles as a claim for a new or omitted condition, even if the insurer deems the matter only a symptom. *Francisco G. Rodriguez*, 59 Van Natta 2422, 2425 (2007). And, an insurer's "no perfected claim" letter does not suffice as the requisite acceptance or denial.

Those precedents establish that a claimant initiates a claim for a new or omitted medical condition under ORS 656.267(1) when clearly requesting formal written acceptance of that condition, even if the requested condition is later determined to be a symptom. Upon receipt of such a claim, the insurer is obligated under ORS 656.262(7)(a) to either accept or deny the requested condition within 60 days. Thus, SAIF's first argument—that there was no claim within the meaning of ORS 656.267(1)—fails.

SAIF's second of three issues involves the interpretation of the text of ORS 656.262(11)(a). This provision that declares that, when an insurer unreasonably delays or refuses payment, or unreasonably delays acceptance or denial of a claim, the insurer shall be liable for a penalty "plus" attorney fees. On questions of statutory construction, we review for errors of law. ORS 183.482(8)(a); *Baker v. Liberty Northwest Ins. Corp.*, 257 Or App 205, 210, 305 P3d 139, *rev den*, 354 Or 597 (2013). We apply the methodology prescribed in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), *as modified by State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), examining the text in context, along with any relevant legislative history, in order to give effect to the legislature's intent.

Parsing the statutory terms, SAIF argues that a penalty must first be assessed before the board can award attorney fees. Without a penalty, SAIF insists that there can be no award of attorney fees. As recited above, ORS 656.262(11)(a) provides, in part,

> "If the insurer * * * unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the insurer * * * shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees assessed under this section."

Much of SAIF's argument depends upon the assumption that the simple word "plus" can have but one connotation. SAIF observes that this word is defined to mean "increased by" or "with the addition or increment of." *Webster's Third New Int'l Dictionary* 1745 (unabridged ed 2002). Relying on its preferred connotation, SAIF posits that the reference to a 25 percent penalty "plus any attorney fees" necessarily "presupposes the existence of a penalty to which the attorney fee is an 'addition' or 'increase.'"

SAIF argues that other parts of that subsection describe the penalty and attorney fee conjunctively. In the following sentences, ORS 656.262(11)(a) and (b) refer to "the additional amount and attorney fees described in this subsection." SAIF reasons that, if the legislature had intended to permit attorney fees independently, then it would have spoken in terms of *any* additional amount *or* attorney fees.

SAIF adds that ORS 656.262(11)(a) dictates that "[t]he fees assessed * * * shall be proportionate to the benefit to the injured worker." SAIF disputes the board's rationale that a claimant receives a benefit when forcing a response and prompting a hearing. SAIF argues that "the benefit," to which this statute refers, can only be an amount of compensation. Otherwise, SAIF insists, attorney fees could not be calculated proportionately to any mere procedural benefit.

We are not persuaded that the plain and ordinary meaning of the word "plus" requires that benefits or a penalty be assessed as a precondition to an award of attorney fees. SAIF's connotation is not the only one. Among the definitions for "plus" that SAIF recognizes is "with the addition * * * of." Applying that meaning here, nothing requires that a penalty must exist before an attorney fee can be awarded. That is, the "additional amount" or penalty may be zero *with the addition of* any attorney fees assessed under this section. To borrow claimant's illustration, "0 + 1 = 1."

SAIF's restrictive interpretation of the disputed provision is even less persuasive when considered within the context of the statute. "It is an elementary principle of statutory construction in this state that we examine the meaning of a phrase in its context." *Suchi v. SAIF*, 238 Or

App 48, 54, 241 P3d 1174 (2010), *rev den*, 350 Or 231 (2011) (citing *Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 508, 98 P3d 1116 (2004)). By its terms, ORS 656.262(11)(a) provides situations giving rise to a penalty and attorney fees: an unreasonable delay or refusal to pay compensation or an unreasonable delay in accepting or *denying* a claim. The legislature has expressly contemplated, as a basis for a penalty or attorney fees, an "unreasonably" delayed "denial" of a claim—the precise circumstance here.

SAIF's interpretation would interpose additional criteria to be satisfied: That is, the unreasonable delay in denying a claim would need to be proved incorrect and to give rise to compensation. That interpretation adds an additional requirement where the legislature did not include one, and, in construing statutes, we are forbidden from inserting what has been omitted. ORS 174.010.

If correct, SAIF's interpretation would assume that the legislature intended that there be no mechanism by which to encourage timely responses to claims that ultimately prove to be unsuccessful. No attorney fees could be recovered even if needed to encourage an insurer's timely response that is merely denial. The denial at least triggers procedural rights, the opportunity for a hearing, and potential remedies. An unspoken philosophy of "no harm, no foul" may seem plausible in other contexts, but, here, ORS 656.262(7)(a) mandates a 60-day deadline even for a denial. That mandate does not suggest indifference to unreasonable delays, nor that delays should be ignored when claims prove unsuccessful.

We are not persuaded that other statutory terms provide context that favors SAIF. It is quite true that ORS 656.262(11)(a) sets a standard that attorney fees should be proportionate to "the benefit to the injured worker." Those terms follow the reference to procedural delays. The resulting standard refers to "*the* benefit to the injured worker," not to the "compensation." In other words, the fees should not be disproportionate to the general result achieved. As the board observed, a claimant achieves a better result than an insurer's neglect when forcing a definitive response and creating an opportunity to present a claim at a hearing. The

claimant achieves a procedural benefit to remedy an insurer's procedural mistake. If the legislature had intended attorney fees to be based on financial compensation alone, it could have simply said so. It did not. The board had sufficient evidence to find that the efforts by claimant's attorney in this case provided a benefit to claimant.

We agree with the board that the legislature did not intend that an award of attorney fees be contingent upon a penalty or the existence of amounts then due. We concur that ORS 656.262(11)(a) permits the board to award attorney fees when an insurer unreasonably delays a denial, even if the purported new or omitted condition is only a symptom of another condition, and even when the result means that no compensation or penalty is awarded.

In its final argument on appeal, SAIF disputes the board's conclusion that its response to the claim was an "unreasonable" delay or denial. The board concluded that SAIF's letter, announcing that the request did not "qualify" as a claim for a new or omitted condition, was a "no perfected claim letter" and not a statutorily authorized acceptance or denial. SAIF does not quarrel with that conclusion. Instead, SAIF refers to our disposition in *Stephens*, involving an insurer's failure to accept or deny what proved to be an unsuccessful claim asserting a new or omitted medical condition. We reversed the board's award of attorney fees, explaining:

> "Under the circumstances, in particular the confused state of the law concerning an insurer's obligation to respond to a new or omitted medical condition claim, *see Crawford*, 241 Or App at 479 we conclude that SAIF's failure to respond by accepting or denying the [claimed condition] was not unreasonable."

*Stephens*, 247 Or App at 114. The insurer's improper response in *Stephens* had been issued in March 2008, several years before our decision in *Crawford* in March 2011. Extending *Stephens* to this case, SAIF contends that the law remains in a confused state, such that SAIF's response in April 2011 should not be considered unreasonable.

We reach a different conclusion. First, SAIF does not dispute that it failed to issue an acceptance or denial

of the claim. SAIF's letter was an unreasonable form of response.

Second, the board did not err in expecting an insurer to comply with the terms of the statute as understood then and now. Although SAIF's letter predated the *Stephens* decision by eight months, it followed about a month *after* our review of the statute in *Crawford*. The statutory language has not recently or meaningfully changed. The insurer's obligation was the same in April 2011 as it was described in *Crawford* and decided in *Stephens*. Indeed, that statutory obligation was already construed by the board and published in a decision four years and six months beforehand in October 2007.[4] *Francisco G. Rodriguez*, 59 Van Natta at 2425-26 (claimant's clear request triggers duty to accept or deny regardless whether ultimately a symptom). Consequently, when finding SAIF's response to this claim to be unreasonable, the board did not err.

In sum, (1) SAIF was required to respond by accepting or denying a claim later found to involve only a symptom; (2) an attorney fee was permitted even when no penalty was awarded; and (3) the board did not err in concluding that SAIF was unreasonable in failing to respond in a timely or proper manner. For those reasons, we affirm the board's order determining that claimant was entitled to an insurer-paid attorney fee under ORS 656.262(11)(a).

Affirmed.

---

[4] SAIF contends that the law was unsettled by our decision in *Young v. Hermiston Good Samaritan*, 223 Or App 99, 194 P3d 857 (2008). In that case, however, the employer issued denials that SAIF, here, failed to do. The case addressed the substantive claim, not claim procedure. *Id.* at 102, 107. The case did not hold that an insurer has no duty to respond to a purported claim for a new or omitted condition even when later proven to be a symptom. The case is not contrary to *Crawford, Stephens*, or the board's decision in *Rodriguez*.